IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM TORRES,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 15-3973** |
| **CAROLYN W. COLVIN,** | : | |
| **ACTING COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| **Defendant.** | : | |

<u>**REPORT AND RECOMMENDATION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                              **November 30, 2016**

Plaintiff, William Torres, brought this counseled action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the Commissioner of the Social Security Administration's decision denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381–1383, (the "Act").  Defendant has filed a response, and the matter is before me for a Report and Recommendation.  For the reasons set forth below, I respectfully recommend that Plaintiff's request for review be **DENIED**.

## I.  PROCEDURAL HISTORY

Plaintiff was born on June 25, 1961, and was fifty-one years old on the alleged disability onset date.  (R. 42, 53, 83, 95).  He is a high school graduate.  (R. 42, 55).  His past relevant work includes case aide and parts sales person.  (R. 42, 56-58, 79).

Plaintiff protectively filed for SSI on August 24, 2012, and DIB on September 5, 2012, alleging disability since August 16, 2012, and August 17, 2012, respectively.  (R. 166-70, 164-

65).  Plaintiff's applications were initially denied on December 20, 2012.  (R. 35, 109-18).

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), (R. 35, 121),

which occurred on December 2, 2013, (R. 35, 49-82).  Plaintiff, represented by an attorney,

appeared and testified, as did an impartial vocational expert ("VE").  (R. 49, 53-78, 78-82).  On

January 23, 2014, the ALJ issued a decision finding Plaintiff not disabled and not entitled to

benefits under the Act.  (R. 35-44).  Thereafter, Plaintiff filed a request for review to the Appeals

Council (R. 28-31).  The Council denied Plaintiff's request, (R. 1-4), thereby making the ALJ's

decision the final decision of the Commissioner.

Plaintiff commenced this action to appeal the Commissioner's decision, asking that the

case be reversed or remanded.  (Compl., ECF No. 3; Pl.'s Br. and Statement of Issues in Support

of Req. for Review, ECF No. 10 [hereinafter "Pl.'s Br."]).  The Commissioner filed a Response.

(Def.'s Resp. to Req. for Review of Pl., ECF No. 11 [hereinafter "Def.'s Resp."]).  The

Honorable Joel H. Slomsky has been referred this matter to me for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.  (Order, ECF No.

12).

## II.     FACTUAL BACKGROUND

### A.     Medical Evidence

#### 1.     Physical Impairments

In May 2010, Plaintiff presented to the Einstein Pain Institute complaining of "[t]otal

spine pain that starts in the neck, bilateral shoulder pain, and mild back and lower back pain."

(R. 344).  At that time, he was diagnosed with cervical and lumbar radiculitis, left shoulder pain,

and left lateral epicondylitis, and epidural injections were recommended as treatment.  (R. 345).

A year later, in May 2011, an MRI of Plaintiff's cervical spine was "[u]nremarkable." (R. 362). Later treatment notes confirmed diagnoses of cervical, thoracic, and lumbar radiculitis. (R. 364, 366, 368, 370, 376, 378, 382, 384).

On November 20, 2012, Plaintiff presented to Drexel University College of Medicine for a neurological evaluation of "widespread pain." (R. 402). A physical examination found him awake, alert, and in no acute distress. (*Id*.). Cervical and lumbar ranges of motion were "appropriate." (*Id*.). Muscle strength was five of five with no involuntary movements and normal muscle bulk and tone. (R. 403). His gait was normal. (*Id*.). Plaintiff was diagnosed with fibromyalgia and prescribed Lyrica. (*Id*.).

In June 2013, Plaintiff underwent testing related to complaints of chronic back pain. (R. 440-41). An MRI of Plaintiff's thoracic spine revealed "[n]o spinal canal or neuroforaminal narrowing" at any level, and showed that "[t]he spinal cord is normal in signal and attenuation." (R. 440). An MRI of Plaintiff's lumbar spine revealed "[n]o significant spinal canal or neuroforaminal narrowing" at any level, although "[m]inimal degenerative changes of the lumbar spine have slightly progressed compared to the prior study." (R. 441).

The record also contains medical opinion evidence. In December 2012, a non-examining physician, Louis Tedesco, M.D., opined that due to "pain, DDD [degenerative disc disease], DJD, probable FM [fibromyalgia]," Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and sit and/or walk for a total of six hours in an eight-hour workday. (R. 89, 101). Dr. Tedesco also opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, scaffolds; frequently balance and stoop; and occasionally kneel, crouch, and crawl. (R. 90, 102).

On November 26, 2013, Gary Oxenberg, M.D., completed two medical statement forms: a medical statement regarding arthritis (R. 442-44) and a medical statement regarding physical abilities and limitations (R. 445-46).[1]   On the arthritis form, Dr. Oxenberg indicated that Plaintiff has a history of joint pain, swelling, tenderness, and morning stiffness; had inflammation of the spine on the most recent examination; and suffers from significant fatigue.  (R. 443-44).  He noted the following limitations and abilities:  can stand for fifteen minutes at one time; can sit for sixty minutes at one time; cannot work any hours in a day; can lift five pounds on an occasional basis, but cannot lift anything on a frequent basis; can occasionally bend and stoop; can frequently engage in fine and gross manipulation in both hands; and can occasionally raise his left and right arms over shoulder level.  (R. 444).   On the physical abilities and limitations form, Dr. Oxenberg stated that Plaintiff suffers from fibromyalgia, a chronic pain syndrome, as well as lumbar degenerative disc disease, cervical and lumbar radiculitis, herniated disc – lumbar L1 and L5-S1, renal calculi, peripheral neuropathy, GERD, and depression.  (R. 445).  He opined that Plaintiff suffers from severe pain.  (R. 445).  He noted similar limitations as those noted on the arthritis form.

### 2.      Mental Impairments

On December 20, 2011, Plaintiff saw Richard Cohen, M.D., for a psychiatric evaluation. (R. 391-92, 422-23).  Plaintiff complained of depression with sleep disturbance and a decrease in appetite, energy, and concentration.  (R. 391, 422).  He reported working at the Department of Public Welfare for the "past five years."  (*Id.*).  Dr. Cohen noted no prior psychiatric history or mental health treatment.  (*Id.*).  Upon mental status exam, Dr. Cohen found Plaintiff oriented

---

[1]   Plaintiff treated with Dr. Oxenberg since at least February 2010 for a variety of ailments including renal calculi, cervical and lumbar radiculitis, gastroesophageal reflux disease, ("GERD"), fibromyalgia, and depression.  (*See, e.g.*, R. 309, 323).

with a mental status quotient of ten out of ten.  (*Id*.).  His insight and judgment were fair, although his mood was depressed and anxious.  (*Id*.).  Dr. Cohen noted suicidal ideation with no plan or intent.  (*Id*.).  Dr. Cohen diagnosed Plaintiff with major depressive disorder (first episode), recommended psychotherapy, and scheduled Plaintiff for a follow-up visit in a month.  (R. 392, 423).  Plaintiff saw Dr. Cohen again in March 2012, April 2012, October 2012, and December 2012, and reported at each appointment that he continued to feel depressed.  (R. 424-27).  Dr. Cohen imposed no functional limitations based on Plaintiff's mental health impairments.  (R. 391-95, 422-27).

On December 5, 2012, Plaintiff saw state consultative examiner Dr. Sheryl Berardinelli, Psy.D., for a psychological evaluation.  (R. 410-14).  She noted his first mental health treatment occurred in 2011.  (*Id*.).  Upon examination, Dr. Berardinelli reported that Plaintiff maintained good eye contact; his speech was "clear, goal-directed, spontaneous, fluid, and coherent"; Plaintiff's volume and tone were normal; his general attitude, behavior, mood, and affect were appropriate; Plaintiff exhibited no difficulty comprehending her questions or conversation; there was no evidence of gross thought disorder; Plaintiff denied delusional thinking; and he rated his depression that day as eight or nine out of ten, and anxiety as nine out of ten.  (R. 413).  Plaintiff reported living in a home with his mother, younger sister, nieces, and nephews.  (R. 412).  He described his activities as doing minimal cleaning, performing daily self-hygiene and grooming, taking public transportation independently, sometimes going food shopping, and managing his finances, although he reported relying on others for meal preparation.  (R. 412).  Plaintiff stated, "I don't have the inspiration.  I don't have the energy.  I don't go out.  I just stay inside."  (R. 412).  He reported being unemployed since August 19, 2012, when he left his position as a clerk at the Department of Public Welfare.  (R. 411, 414).  Dr. Berardinelli diagnosed Plaintiff with

major depressive disorder, recurrent, moderate to severe, without psychotic features, and anxiety disorder, not otherwise specified.  (R. 414).  She opined Plaintiff's prognosis "is fair with treatment" and recommended "at least weekly outpatient psychotherapy."  (R. 414).

On December 10, 2012, Dr. Berardinelli completed a Medical Source Statement of Ability to do Work-Related Activities (Mental).  (R. 415-17).  She opined that Plaintiff's ability to understand, remember, and carry out detailed instructions is slightly affected by his impairment.  (R. 416).  She also noted a slight limitation in his ability to interact appropriately with the public; moderate limitations in his abilities to interact with supervisors and co-workers; and marked limitations in his ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting.  (R. 416).  Dr. Berardinelli cited Plaintiff's major depressive disorder as the cause for these limitations.  (R. 416).

On December 17, 2012, non-examining psychologist, James Vizza, Psy.D., completed a Psychiatric Review Technique ("PRT") form and a Mental Residual Capacity Assessment.  (R. 99-100, 102-04).  Dr. Vizza determined Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration.  (R. 88, 100).  In assessing Plaintiff's limitations, Dr. Vizza considered the opinion of Dr. Berardinelli, which he found to be "partially consistent" with his determination of Plaintiff's abilities.  (R. 92).  Dr. Vizza assessed Plaintiff as moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without districting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting.  (R. 91, 103).  He placed no restrictions on Plaintiff's abilities to understand and remember, or sustain concentration, persistence and pace.  (R. 91-92).

**B.      Lay Opinion Evidence**

Plaintiff completed a "Function Report – Adult" on October 14, 2012.  (R. 217-26).  In that Report, Plaintiff explained that pain interferes with his ability to fall asleep and that he sometimes wakes up in the middle of the night crying in pain.  (R. 218).  He reported that he takes care of his mother, which entails making her meals, making her bed, "do[ing] her clothes," and buying her groceries.  (R. 218).  He described a typical day as praying when he wakes up, taking a shower, drinking coffee, exercising and stretching, taking his medicine, cleaning, buying groceries, and going to appointments.  (R. 218).  He does laundry, some cleaning, and very little ironing about once a week, but he needs encouragement to do these things because he is "so tired and [in] so much pain [that he] sometimes wish[es] [he] was not [a]live."  (R. 219).  He reported no difficulties in personal care activities such as dressing, shaving, and bathing.  (R. 218).  He said that he drives, but he "never [goes] far at all."  (R. 220).  He decreased his church attendance from five days per week to one or two times per month because he "just [doesn't] feel like going."  (R. 221).  He reported taking MS-Contin, Lyrica, and Hydromorphine, and experiencing tiredness and drowsiness as side effects.  (R. 224).

Plaintiff also completed a Supplemental Function Questionnaire regarding his pain.  (R. 225-26).  He reported that his pain began in 2005 and was caused by "standing for too long and unloading and loading trucks and kidney stones."  (R. 225).  He described the pain as widespread "stabing [sic] awful pain between the shoulder blades" and "burning sensation in [the] bottom of both feet."  (R. 225).  He claims to experience pain in his neck, between the shoulder blades, his lower back, and the bottom of his feet.  (R. 225).  The pain is made worse by bending, standing, walking, temperature extremes, lifting, and sitting for too long and is usually worse in the

mornings.  (R. 225).  He is almost constantly in pain, but his medication can relieve the pain for "sometimes up to [five hours]."  (R. 225).

Plaintiff's sister, Sonia Borges, completed a "Function Report – Adult – Third Party" on October 14, 2012.  (R. 208-15).  Ms. Borges reported that Plaintiff helps their mother clean and shop.  (R. 208).  She stated that he "[d]oes not rest when he sleeps and wakes up in pain."  (R. 208).  When asked if Plaintiff exhibits any unusual behavior or fears, she responded that he "[does not] like to drive like before and is mostly in his room alone."  (R. 214).  She reported that Plaintiff takes Dilaudid, Morphine Sulfate, and Lyrica, and becomes "sleepy [and] tired" as a result.  (R. 215).

At the administrative hearing, Plaintiff testified that he stopped working because he was forced to resign from his job.  (R. 59).  He stated, "I was always going out sick or not going at all or leaving work early or coming in late and it got to the point where they couldn't put up with that any longer."  (R. 59).  He also testified that he is unable to work because of, *inter alia*, constant pain and disturbed sleep.  (R. 59-60).  He stated that sitting at the hearing for approximately twenty-five or thirty minutes caused him pain.  (R. 67).  He testified that when he is at home, he is "always in bed" because lying flat provides relief.  (R. 67-68).  He described a typical day as staying in bed until two or three o'clock in the afternoon, and then someone brings him coffee, "so [he] can start with [his] medications."  (R. 73).  Plaintiff also explained that he takes a variety of medications, including Hydromorphine, Dilaudid, Morphine Sulfate, Lyrica, Losartan, Nexium, Mobic, and Klonopin; that he uses over-the-counter ointments and gels; and that he gets injections in his back and spine.  (R. 61-62).  When asked if the medications help, Plaintiff responded that they make him feel "high" and "itch all the time," but he also said that "[t]he pain goes away."  (R. 62).

### III.    THE ALJ'S DECISION

In his January 23, 2014, decision, the ALJ found at step one that Plaintiff had not

engaged in substantial gainful activity since the alleged onset date of August 16, 2012.  (R. 37).

At step two, the ALJ found Plaintiff had the following severe impairments:  degenerative

disc disease of the lumbosacral spine, major depression, and anxiety.  (R. 37).  The ALJ also

found that Plaintiff suffered from "non-obstructing renal calculi (kidney stone)," but determined

this was a non-severe impairment.  (R. 37-38).

At step three, the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that satisfied that criteria of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (R. 38).  The ALJ expressly considered the listings in section 1.04

A-C (pertaining to disorders of the spine), section 12.04 (pertaining to affective disorders), and

section 12.06 (pertaining to anxiety-related disorders).

In assessing Plaintiff's Residual Functional Capacity ("RFC"), the ALJ determined

Plaintiff had the following RFC[2]:

> [Plaintiff] has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except:  he
> is limited to simple, routine tasks requiring no more than reasoning
> level 2; limited to only occasional contact with the public,
> coworkers, and supervisors; cannot work on assembly lines or in
> teams; and can only tolerate little change in the work setting or
> work processes.

(R. 40).  At step four, he found that in light of Plaintiff's RFC, Plaintiff is unable to perform any

past relevant work.  (R. 42).

The ALJ then proceeded to step five, and determined, based on the testimony of the VE,

that there existed other jobs in the national economy that Plaintiff was able to perform despite his

---

[2] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"  *Fargnoli*, *v. Massanari,* 247 F.3d 34, 40 (3d Cir. 2001).

limitations.  (R. 43).  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act.

## IV.    LEGAL STANDARD

To receive DIB or SSI benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  A five-step sequential evaluation process is used to determine eligibility for disability benefits.[3]  The claimant bears the burden of establishing steps

_____

[3]  The Commissioner uses the same five-step process to determine whether a claimant is disabled in both SSI and DIB cases.  *See* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI).  The steps are as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his [or her] physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in

one through four, and the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the national economy, in light of his age, education, work experience, and RFC.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a denial of disability benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision.  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is a deferential standard, requiring "less than a preponderance" and only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  When the conclusion of the ALJ is supported by substantial evidence, the Court is bound by those findings, even if it would have decided the factual inquiry differently.  *Fargnoli v. Massanari,* 247 F.3d 34, 41 (3d Cir. 2001).  However, the Commissioner must provide an explanation for rejecting pertinent or probative evidence.  While a court may not reweigh the evidence, it may evaluate the basis for the ALJ's decision.  *Horst v. Comm'r of Soc. Sec¸* 551 F.App'x 41, 45 (3d Cir. 2014); *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)

the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000).

("[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

## V.   DISCUSSION

Plaintiff alleges that the ALJ improperly weighed the physician opinion evidence (Pl.'s Br. 5-12, ECF No. 10), improperly disregarded Plaintiff's subjective complaints of pain as not credible (*id*. at 12-17), erred in not considering the side effects of his medications (*id*. at 17-18), proposed an internally inconsistent hypothetical to the VE (*id*. at 18), and relied on testimony from the VE that was inconsistent with the DOT, (*id*. at 18-19).  The Court will address each argument in turn.

### A.   Weight of Medical Evidence

Plaintiff argues that the ALJ improperly disregarded the medical opinions of Dr. Oxenberg, a treating physician, and Dr. Berardinelli, a consultative examiner.  (Pl.'s Br. 5-12, ECF No. 10).  The Commissioner counters that the ALJ's weighing of medical opinion evidence was supported by substantial evidence.  (Def.'s Resp. 3, ECF No. 11).  The Court agrees with the Commissioner.

#### 1.   Physical Impairments

Plaintiff argues that the ALJ erroneously rejected the opinion of his treating physician, Dr. Oxenberg, that he is unable to work.  (Pl.'s Br. 5-10, ECF No. 10).  Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight.  *See, e.g.*, *Fargnoli*, 247 F.3d at 43; *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

However, an ALJ may decide not to credit a treating physician's opinion when it is contradicted by other competent medical evidence of record. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  When an ALJ does not accord a treating physician's opinion controlling weight, "it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007) (not precedential); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Not every statement or opinion offered by a treating physician is a "medical" opinion. *Morrison v. Barnhart*¸ 78 F.App'x 820, 824-25 (3d Cir. 2003) (citations omitted).

> "[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.  An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of [his] symptoms and limitations when the claimant's complaints are properly discounted."

*Id*.  Additionally, "[o]pinions on some issues, such as [a statement by a medical source that you are 'unable to work'], are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner . . . ."  20 C.F.R. §§ 404.1527(d); 416.927(e).  Because "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations," *Chandler v. Comm'r of Social Sec*., 667 F.3d 356, 361 (3d Cir. 2011), the Commissioner is not required to give any "special significance to the source of an opinion on" whether an individual is able to work, 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3).  Nonetheless, "[t]he ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); *see also* 20 C.F.R. § 404.1527(d)(1) (stating that Commissioner will

"review all of the medical findings and other evidence that support a medical source's statement that you are disabled.").

In weighing the evidence of Plaintiff's physical impairments, the ALJ in this case considered the medical opinions of treating physician Dr. Oxenberg and non-examining consultative examiner, Dr. Tedesco.  In assigning no weight to Dr. Oxenberg's opinion, the ALJ explained:

> Dr. Gary Oxenberg completed [two] medical source statements on November 26, 2013, indicating that [Plaintiff] was unable to work because of standing, sitting, bending, and stooping limitations, and limitations for raising his arms over shoulder level.  This doctor's opinion is not given any weight as it is merely a check-off form without any narrative report giving the rationale to support the findings [and is] not consistent with other objective medical evidence.  Also, deciding on the issue of disability is reserved to the Commissioner.

(R. 42) (citing R. 442-44, 445-46).  The ALJ's stated reasons for rejecting Dr. Oxenberg's opinion are supported by substantial evidence.

First, the ALJ found Dr. Oxenberg's opinion that Plaintiff was unable to work inconsistent with objective medical evidence of record.  (R. 42).  Substantial evidence supports this conclusion.  A November 20, 2012 neurological evaluation revealed that Plaintiff's "range of motion testing of the cervical and lumbar spines were noted to be appropriate; his muscle strength was 5 of 5; he had normal muscle bulk and tone; and his gait was normal."  (R. 41) (citing R. 400-09; (*see also* R. 402-03).  *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (explaining references in the record to reports of good strength and normal range of motion in spine are properly considered as objective medical evidence).  A June 10, 2013 MRI of Plaintiff's thoracic spine was "normal" and of the lumbar spine showed only "minimal" degenerative changes.  (R. 41, 440-47).  *See Burnett*, 220 F.3d at 121 (explaining MRI results are objective medical

evidence).  The ALJ additionally considered June 18, 2013 treatment notes from the Einstein

Pain Institute and correctly remarked that "diagnostic testing . . . show[s] degenerative disc

disease in the thoracic and lumbar spinal regions, but no limitations are annotated."  (R. 41) (R.

435).  To the extent the Plaintiff points to diagnoses in the record to bolster Dr. Oxenberg's

disability opinion, diagnoses of a condition by itself does not establish disability.  *See Foley v.

Comm'r of Soc. Sec.,* 349 F. App'x 805, 808 (3d Cir. 2009) citing *Petition of Sullivan*, 904 F.2d

826, 845 (3d. Cir.1990); see also *Deal v. Astrue*, No. 14-1750, 2015 WL 3613318, at *8 (M.D.

Pa. June 8, 2015).

Second, the ALJ concluded that Dr. Oxenberg failed to provide sufficient support or

explanation for the findings in his "check-the-box" medical source statement, and his opinion

that Plaintiff is unable to work is not entitled to any special significance.  Check-the-box forms

with no narrative explanation constitute "weak evidence at best."  *Mason v. Shalala*, 944 F.2d

1058, 1065 (3d Cir. 1993); *see also* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  "[W]here these

so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect.'"

*Mason*, 944 F.2d at 1065 (quoting *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)).  The

ALJ's rejection of Dr. Oxenberg's opinion because "it is merely a check-off form" was not error.

Additionally, Dr. Oxenberg opined that Plaintiff could not work (R. 444); but, as the ALJ

correctly noted, "deciding on the issue of disability is reserved to the Commissioner."  (R. 42).

The ALJ was not required to give any "special significance" to this portion of Dr. Oxenberg's

opinion.  *See* 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3) (explaining statements that a

claimant is "unable to work" are not entitled to "any special significance" because that is an issue

reserved to the Commissioner).

Finally, to the extent that Plaintiff argues the ALJ improperly credited the opinion of non-examining doctor, Louis Tedesco, M.D., over treating physician Dr. Oxenberg, this argument lacks merit. The Third Circuit has explained that when "'the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit' and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence." *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010) (not precedential) (quoting *Morales*, 225 F.3d at 317); *Dougherty v. Barnhart¸* No. 05-5383, 2006 WL 2433792, at *7 (E.D. Pa. Aug. 21, 2006). As discussed above, the ALJ cited objective medical evidence that conflicted with the opinion of Plaintiff's treating physician, Dr. Oxenberg. The ALJ therefore properly considered the opinion of state agency physician, Dr. Tedesco. 20 C.F.R. §§404.1527(e)(2)(i), 416.927(e)(2)(i) (ALJ entitled to rely on state agency physicians who are "highly qualified . . . experts in Social Security disability evaluation."); *see also Chandler,* 667 F.3d at 361. Dr. Tedesco reviewed Plaintiff's medical records and determined that he was "capable of performing a range of light exertional work with postural limitations." (R. 42, 89-90). He based his opinion on medical findings of Plaintiff's normal strength, gait, muscle tone and range of motion, and Plaintiff's reported ability to independently provide self-care, drive, clean, and do some light mowing. (R. 90). Based on these findings and the record as a whole, the ALJ decision to credit Dr. Tedesco over Dr. Oxenberg was appropriate and supported by substantial evidence. *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (citations omitted) ("Light exertional work 'generally requires the ability to stand and carry weight for approximately six hours of an eight hour day.'").

Accordingly, the ALJ's decision to afford Dr. Oxenberg's opinion no weight was supported by substantial evidence. *See, e.g., Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.

1988) (explaining treating physician's opinion can be rejected "on the basis of contradictory medical evidence").  The Court respectfully recommends that the Plaintiff's request for relief on this basis be denied. [4]

### 2.    Mental Impairments

Plaintiff also claims that the ALJ erred in rejecting the opinion of Dr. Berardinelli, who performed a clinical psychological disability evaluation at the state agency's request.  (Pl.'s Br. 11, ECF No. 10).  In a Medical Source Statement dated December 10, 2012, Dr. Berardinelli found that Plaintiff's mental impairments did not impact his ability to understand, remember and carry out short, simple instructions.  (R. 416).  She imposed only "slight" to "moderate" restrictions in most categories of work-related mental activities, and found that he had "marked" limitations in his ability to respond appropriately to work pressures or changes.  (R. 416).  The ALJ found these latter, "marked" findings not totally credible because, in his view, "they were not supported by [Dr. Berardinelli's] narrative report."  (R. 41).  According to Plaintiff, however, Dr. Berardinelli's opinion was consistent with his mental status examination.  The Court does not find Plaintiff's argument persuasive.

During a December 5, 2012 psychological evaluation, Dr. Berardinelli observed that Plaintiff's "[d]emonstrated mood and affect were appropriate" and "general mood and demeanor were cooperative."  (R. 410).  With respect to mental status, Dr. Berardinelli observed that Plaintiff's speech was clear, goal-directed, spontaneous, fluid, and coherent with normal volume

---

[4]  The Court rejects Plaintiff's additional arguments that the ALJ failed to assign any explicit weight to Dr. Tedesco's opinion, (Pl.'s Br. 7), and failed to consider the factors for weighing medical opinion evidence outlined in 20 C.F.R. 404.1527(d), (Pl.'s Br. 9).  While the ALJ did "not explicitly assign a certain quantum of weight or enumerate the factors affecting weight with regard to some of the medial opinions," the ALJ sufficiently developed the record to permit meaningful judicial review. *See Molloy v. Astrue*, No. 08-4801, 2010 WL 421090, at *13 (D.N.J. Feb. 1, 2010).

and tone; he did not struggle to comprehend Dr. Berardinelli's questions and conversations; and his affect and mood were appropriate, (R. 413). Regarding cognitive functioning, Dr. Berardinelli found Plaintiff was orientated to time and place and had an average fund of knowledge. (R. 413). While Plaintiff stated that he has "difficulty mustering motivation to perform activities of daily living" and has "withdrawn from friends," Dr. Berardinelli noted that Plaintiff performs self-hygiene/grooming, takes public transportation independently, goes food shopping and is capable of paying bills and managing his finances. (R. 412-13). Having reviewed Dr. Berardinelli's narrative report of her December 5, 2012, evaluation, the Court finds that the record supports the ALJ's decision to discount Dr. Berardinelli's findings of "marked limitations" contained in her medical source statement. Accordingly, this Court will not independently weight the evidence or substitute its own conclusions for those of the ALJ. *See Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Furthermore, the ALJ considered the opinion of state agency consultant, Dr. Vizza, in assessing Plaintiff's RFC. (R. 42) (citing R. 87-88, 90-92, 99-100, 102-04). Dr. Vizza completed a mental RFC assessment finding that Plaintiff's mental impairments resulted in "mild" functional limitations for activities of daily living; moderate limitations for maintaining social functioning; and mild functional limitations for maintaining concentration, persistence, or pace. (*Id.*). He concluded that Plaintiff has no memory or concentration limitations. Dr. Vizza explained that Plaintiff's ability to respond appropriately to changes in the work setting is moderately limited and opined that Plaintiff can sustain an ordinary routine without special supervision. (R. 91). As explained above in relation to state agency consultant Dr. Tedesco, the

ALJ properly considered the opinion of Dr. Vizza in weighing the medical opinion evidence related to Plaintiff's mental impairments. *See* SSR 96-6p ("Because state agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s). . . .").

Finally, the ALJ discussed the limited mental health records which were inconsistent with the "marked" limitations assessed by Dr. Berardinelli.  In particular, Plaintiff saw Dr. Richard Cohen a total of six times, twice after the alleged disability onset date.  (R. 40).  Dr. Cohen did not asses any functional limitations as a result of Plaintiff's mental impairments.  (R. 40, 422-27).  Based on his December 20, 2011, examination, Dr. Cohen found that Plaintiff exhibited a depressed and anxious mood but provided goal-directed answers and demonstrated full orientation, ten out of ten mental status quotient, three out of three five minute recall, fair insight and judgment, and no evidence of thought disorder.  (R. 422).  Notes from subsequent monthly visits record Plaintiff's reports of depression syndrome, but Dr. Cohen did not indicate any mental health testing, nor did he limit Plaintiff based on his impairments.  (R. 423-27).

For these reasons, the Court finds that substantial evidence supported the weight given by the ALJ to the opinions of Dr. Oxenberg and Dr. Berardinelli, and respectfully recommends that the Plaintiff's request for relief on this basis be denied.

### B.    Plaintiff's Credibility and Subjective Complaints of Pain

Plaintiff argues that the ALJ improperly dismissed his subjective complaints of pain as not credible.  (Pl.'s Br. 12-17, ECF No. 10).  The Commissioner counters that "[t]he record evidence does not support Plaintiff's extreme testimony regarding his allegedly crippling mental

and physical limitations." (Def.'s Resp. 10-12, ECF No. 11). The Court finds that the ALJ's credibility assessment was supported by substantial evidence.

It is within the province of the ALJ to evaluate the credibility of a claimant. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). "Although 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing SSR 96–7p and C.F.R. § 404.1529(a)). An ALJ's "findings on the credibility of [a] claimant[ ] 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Irelan v. Barnhart*, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)), *aff'd*, 82 F. App'x 66 (3d Cir. 2003). An ALJ may disregard a claimant's subjective complaints when contrary evidence exists in the record. *Mason,* 994 F.2d at 1067-68. However, the ALJ must provide his reasons for affording a claimant's testimony little weight. *Burnett*, 220 F.3d at 122; *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain where he has considered subjective complaints and specified reasons for rejecting claim).

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and reasonably concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were "not entirely credible." (R. 41). In assessing Plaintiff's credibility, the ALJ pointed to objective medical evidence that contradicted Plaintiff's subjective claims. The ALJ explained:

> In terms of [Plaintiff's] allegations, he testified to significant physical limitations, including walking three blocks, standing for 15-20 minutes, problems with his left wrist, lifting 5-7 pounds, and sitting for less than 25 minutes. However, the undersigned does

> not find this testimony entirely credible. In a note from Drexel dated November 20, 2012, his range of motion testing of the cervical and lumbar spines were noted to be appropriate; his muscle strength was 5 of 5; he had normal muscle bulk and tone; and his gait was normal. The objective findings from diagnostic testing in the treatment notes from Einstein Pain Institute show degenerative disc disease in the thoracic and lumbar spinal regions, but no limitations are annotated. Based on this evidence, the undersigned limits [Plaintiff] to light work.

(R. 41); (*see also* R. 402-03). The ALJ's consideration of this evidence when assessing Plaintiff's credibility was proper. *See Jones v. Colvin*, No. 13-4831, 2014 WL 2862245, at *9 (E.D. Pa. June 24, 2014) (finding physical examinations that revealed "full or almost-full motor strength, normal reflexes, normal sensation, and a normal or almost-normal gait" that were inconsistent with plaintiff's "claims of disabling pain and physical limitations" supported ALJ's credibility finding). Additionally, the ALJ correctly noted within his opinion that, "[a] thoracic MRI from June 10, 2013, was normal, and a lumbar MRI from the same day, showed 'minimal' degenerative changes of the lumbar spine with no significant spinal canal or neuroforaminal narrowing." (R. 41) (citing R. 440-41). *See Dority v. Comm'r Soc. Sec.*, 621 F. App'x 728, 731 (3d Cir. 2015) (finding ALJ's credibility finding was supported by substantial evidence when ALJ compared plaintiff's complaints of back pain against medical records showing only "mild stenosis with no disk disease"). After careful consideration of the administrative record, the Court finds that the ALJ's credibility determination is supported by substantial evidence. Therefore, the Court respectfully recommends that Plaintiff's request for relief on this basis be denied. [5]

---

[5] Plaintiff argues in passing that the ALJ rejected out of hand and without explanation a Third Party Function Report prepared by his sister. (Pl.'s Br. 15, ECF No. 10). This argument lacks merit. In his decision, the ALJ considered the Third Party Function Report and rejected it based on the same reasons given for discounting Plaintiff's subjective complaints of pain. (R. 42) (citing R. 208-16, 217-227).

C.        **Failure to Consider Side Effects of Medication**

Plaintiff argues that the ALJ erred in failing to consider the side effects of his medications in accordance with SSR 96-7p[6] and when assessing Plaintiff's RFC in accordance with SSR 96-8p.  (Pl.'s Br. 17, ECF No. 10).[7]  The Commissioner counters that Plaintiff's self-reported side effects are not credible and are unsubstantiated, and that "Plaintiff has not explained how the RFC finding . . . does not adequately account for the alleged side effects." (Def.'s Resp. 12, ECF No. 11).  The Court finds the ALJ did not err in failing to consider the side effects of Plaintiff's medication.

Here, the ALJ did not discuss the type, dosage, effectiveness, or side effects of Plaintiff's medications.  The only mention of medication in the ALJ's decision was that Plaintiff "was prescribed Lyrica."  (R. 41) (citing R. 402-03).  Although an ALJ must typically discuss the side effects of medication, "failure to consider side effects is not error where the only probative evidence is the claimant's own conclusory statements." *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 198-99 (3d Cir. 2012) (citing 20 C.F.R. § 404.1529(c)(3)); *see also Grandilla v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (not precedential) (finding ALJ's failure to consider plaintiff's self-reported side effects was not error when plaintiff cited no medical evidence showing she suffered from adverse side effects).  That is the situation here, as no medical provider substantiated Plaintiff's inconsistent self-reported side effects.

---

[6]  SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016, after the ALJ's unfavorable decision and after the party's briefs were submitted.

[7]  Plaintiff points specifically to his prescriptions for Morphine Sulfate, Dilaudid, Mobic, Lyrica, and Restoril.  (Pl.'s Br. 17, ECF No. 10).  According to Plaintiff's Disability Report – Appeal Form, he is prescribed MS-Contin (Morphine Sulfate), Dilaudid, and Lyrica from the Einstein Pain Center (R. 234), which the record indicates is the Einstein Pain Institute.  It appears Dr. Oxenberg prescribes him Restoril.  (*See* R. 483).  It is unclear who prescribes him Mobic.

In October 2012, Plaintiff indicated on his Adult Function Report and Supplemental Function Questionnaire that MS-Contin (Morphine Sulfate), Lyrica, and Hydromorphine (Dilaudid) make him feel tired and drowsy (R. 224) and that his medications can relieve his pain for "sometimes up to [five hours]." (R. 225). However, in February 2013, Plaintiff reported on his Disability Report – Appeal Form that his medications have no side effects. (R. 234). Then, in December 2013, Plaintiff testified at the administrative hearing that his medications make him feel "high" and "itch all the time," but that the medications make "[t]he pain go[ ] away." (R. 62). A review of the record reveals that the only side effect Plaintiff reported to his prescribers at the Einstein Pain Institute was constipation. (R. 364). Otherwise, Plaintiff either indicated that his pain medications "work wonders" (R. 370) or that the medications were not effective (R. 368, 376). Likewise, while Dr. Oxenberg's notes are sometimes difficult to read, it does not appear Plaintiff reported any adverse side effects from Restoril. (*See* R. 299-324, 478-501).

In addition, Plaintiff does not identify medical evidence of record that supports his claims of adverse side effects; he merely includes a list of the medications' common side effects. (*See* Pl.'s Br. 17, ECF No. 10). This is not sufficient. *See Schmidt*, 465 F. App'x at 199 (describing plaintiff's testimony as "unavailing" when plaintiff testified to possible side effects of medications, rather than actual side effects he experienced). Additionally, as the Commissioner points out, "Plaintiff has not explained how the RFC finding, which limits Plaintiff to simple, routine tasks . . . does not adequately account for the alleged side effects." (Def.'s Resp. 12, ECF No. 11). *See Baker v. Astrue*, No. 07-04560, 2008 WL 3562080, at *7 (E.D. Pa. Aug. 13, 2008) ("[T]he ALJ's RFC finding, limiting Plaintiff to jobs involving only simple, routine one to two step tasks, could accommodate any alleged side effects from Plaintiff's medications [including drowsiness].").

Because the ALJ's failure to consider the side effects of Plaintiff's medication was not erroneous, remand is not recommended on this basis.

### D.        Hypothetical and VE Testimony

Plaintiff presents two arguments regarding step five:  (1) that the hypothetical posed to the VE was internally inconsistent by limiting Plaintiff to simple, routine tasks but still allowing for level two reasoning[8] and (2) that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") because the VE identified office helper as "DOT 209.567-014," which is actually the number for order clerk, food and beverage.  (Pl.'s Br. 18, ECF No. 10). The Commissioner responds that there is "no conflict" in the posed hypothetical and that the alleged inconsistency with the DOT was the result of the VE "merely identif[ying] the wrong DOT number."  (Def.'s Resp. 13, ECF No. 11).  The Court concludes the posed hypothetical was not internally inconsistent; the Court further concludes that the VE's misidentification of the DOT number does not warrant remand.

The Third Circuit has held that "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the [vocational] expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Sec'y*, 722 F.2d 1150, 1155 (3d Cir. 1983) (stating the expert must have

---

[8] "DOT reasoning levels refer to informal and formal levels of education required for satisfactory job performance."  *McHerrin v. Astrue*, No. 09-2035, 2010 WL 3516433 (E.D. Pa. Aug. 31, 2010) (citing DICOT, App. C).  Level two reasoning is defined as:  "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." (DICOT, App. C).  Level one reasoning is defined as:  "Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  (DICOT, App. C).  Plaintiff argues that "[j]obs with a limitation to routine, repetitive tasks allows [sic] for only level 1 reasoning skills."  (Pl.'s Br. 18, ECF No. 10).

evaluated the claimant's particular impairments as contained in the record)).  If a conflict arises

between the VE's testimony and the DOT, the ALJ "must elicit a reasonable explanation for the

conflict."  SSR 00-4p.  The Third Circuit has explained that when a conflict arises,

> [A]n ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) "elicit a reasonable explanation" where an inconsistency does appear, and (3) explain in its decision "how the conflict was resolved."

*Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (quoting *Burns v. Barnhart*, 312 F.3d 113,

127 (3d Cir. 2002)).  Failure to follow these steps "may warrant remand in a particular case."  *Id*.

(citing *Rutherford*, 399 F.3d at 557).  However, "the presence of inconsistencies does not

*mandate* remand, so long as 'substantial evidence exists in other portions of the record that can

form an appropriate basis to support the result.'"  *Id*. (citations omitted) (emphasis in original).

Here, the ALJ's posed hypothetical did not contain an inconsistency by limiting Plaintiff

to "simple, routine tasks, requiring no more than reasoning level II."  (*See* R. 80).  "There is a

growing consensus within this Circuit and elsewhere that '[w]orking at reasoning level 2 [does]

not contradict the mandate that [a claimant's] work be simple, routine, and repetitive.'"  *Simpson

v. Astrue*, No. 10-2874, 2011 WL 1883124, at *6 (E.D. Pa. May 17, 2011) (quoting *Money v.

Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) and collecting cases).  Thus, limiting Plaintiff to

simple, routine tasks, requiring no more than reasoning level two, does not warrant remand.

Regarding Plaintiff's second argument, the VE's misidentification of the office helper

position's DOT number does not warrant remand.  In *Jones v. Barnhart*, 364 F.3d 501 (3d Cir.

2004), the Third Circuit found that inconsistencies with the DOT did not render the decision

unsupported by substantial evidence when (1) "such inconsistencies did not exist as to *all* of the

jobs identified by the vocational expert"; and (2) "the vocational expert testified that the three

jobs he listed were simply examples, rather than an exhaustive list, of the work the claimant

could perform." *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005) (emphasis in original). The same is true here: the only alleged inconsistency occurred with respect to the office helper position, and the VE testified about "examples" of jobs Plaintiff could perform. (*See* R. 80). The other positions identified – "inspectors and sorters" and "housekeeping cleaner" (R. 80) – were unaffected by the VE's misidentification, so the ALJ was still able to identify other jobs that exist in significant numbers in the national economy. *See Dickerson v. Colvin*, No. 12-CV-05585, 2014 WL 562981, at *10 (D.N.J. Feb. 11, 2014) ("[I]t is sufficient for the ALJ to identify at least one job that exists in significant numbers."). Additionally, "[w]hile the Third Circuit has recognized the ALJ's 'affirmative duty' to inquire about conflicts, here 'any conflict [was] not so obvious that the ALJ should have pursued the question.'" *Simpson*, 2011 WL 1883124, at *7 (quoting *Rutherford*, 399 F.3d at 557 and *Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009)). As in *Simpson*, Plaintiff's counsel chose not to question the VE about any conflict with the DOT and, in fact, declined to cross-examine the VE at all. *See id.*; (R. 81).

Accordingly, the Court does not recommend remand on this claim.


## VI.    CONCLUSION

After careful review of the record, I respectfully recommend that the District Court deny Plaintiff's request for review.

Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this __30th__ day of November, 2016, it is RESPECTFULLY

RECOMMENDED that Plaintiff's request for review be DENIED.


BY THE COURT:


   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE